

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

WILLIAM ROBINSON, )
)
Plaintiff, )
)
v. ) Civil Action No. 3:18CV117–HEH
)
J. FENNER, *et al.*, )
)
Defendants. )

## MEMORANDUM OPINION
### (Granting in Part and Denying in Part Motion to Dismiss)

William Robinson, a former Virginia pretrial detainee proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[1] This action proceeds on Robinson's Second Particularized Complaint ("Complaint," ECF No. 39). Robinson contends that Defendants Officer J. Fenner ("Officer Fenner"), Captain Hurlock, and Lieutenant Hansen violated his rights during his incarceration at the Prince William–Manassas Regional Adult Detention Center. The following claims remain before the Court:[2]

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization in the quotations from Robinson's submissions.

| Claim One: | Officer Fenner (a) assaulted Robinson and used excessive force, (b) "falsely arrested [Robinson]," (c) "maliciously made false statements causing [Robinson] to be false[ly] imprisoned inside of the jail on TSL,"[3] and (d) "punished [Robinson] for being assaulted, all without due process." (Compl. 1.) |
|---|---|
| Claim Two: | After Robinson was assaulted, Lieutenant Hansen "denied [Robinson] due process [by] not investigating [Robinson's] description of the events which were true enough that [he] was found not guilty of assault." (*Id.*) |
| Claim Three: | Captain Hurlock violated Robinson's (a) right to due process and (b) right to be free from cruel and unusual punishment when Captain Hurlock "had [Robinson] placed on TSL from the time of the incident 8–30–17 to 1–11–18." (*Id.* at 2.)[4] |

As relief, Robinson seeks monetary damages.[5] (*Id.* at 3–4.)

Defendants filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 50.) Robinson filed a Response. (ECF No. 52.) For the reasons stated below, the Motion to Dismiss (ECF No. 50) will be granted in part and denied in part.

---

[3] Robinson does not define the components of the acronym "TSL," but indicates that when placed on TSL, he was "housed on a higher security level." (Compl. 3.)

[4] The Court notes that in its prior Memorandum Opinion and Order, the Court did not delineate between Claim Three (a) and (b). (*See* ECF No. 48, at 5.) For clarity, the Court does so in this Memorandum Opinion and Order.

[5] Robinson also requests that Officer Fenner be "criminally charged." (Compl. 3.) However, § 1983 does not provide a mechanism by which an individual may bring criminal charges against another, and it does not provide a mechanism for compelling a prosecutor to seek the prosecution of another. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (holding that "a private citizen lacks a judicially cognizable interest in the [criminal] prosecution or nonprosecution of another"); *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution." (citation omitted)).

# I. STANDARD FOR MOTION TO DISMISS

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject matter of a complaint. Such challenges can be facial, asserting that the facts as pled fail to establish jurisdiction, or factual, disputing the pleadings themselves and arguing that other facts demonstrate that no jurisdiction exists. *Lufti v. United States*, 527 F. App'x 236, 241 (4th Cir. 2013) (citing *Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009)). If a defendant raises a factual challenge, "the district court may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (citations omitted). Consideration of evidence outside of the pleadings on a Rule 12(b)(1) motion does not necessarily convert the motion to one for summary judgment.

4

*Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted); *McBurney v. Cuccinelli*, 616 F.3d 393, 409 (4th Cir. 2010) (Agee, J., concurring in part and dissenting in part) (discussing that motions under Rule 12(b)(1) are not restricted by Rule 12(d)). Regardless of whether the challenge is facial or factual, the plaintiff bears the burden of proof to preserve jurisdiction. *Jadhav*, 555 F.3d at 348; *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

## II. ROBINSON'S ALLEGATIONS

In Robinson's Complaint, he presents the following allegations:

> Officer J. Fenner assaulted me causing injury to my person while I was inside of my cell awaiting trial. Then used excessive force when he falsely arrested me. This officer maliciously made false statements causing me to be false[ly] imprisoned inside of the jail on TSL by [Captain] Hurlock. I was punished for being assaulted all without due process.
>
> [Lieutenant] Hansen denied me due process [by] not investigating my description of events which were true enough that I was found not guilty of assault. This [lieutenant] only accepted Officer Fenner's story which in my opinion denied me of a basic right of due process. [Lieutenant] Hansen also told me that he would not reopen the investigation [and] consider[ed] this matter closed.
>
> [Captain] Hurlock had me placed on TSL from the time of the incident 8–30–17 to 1–11–18. I had to be handcuffed and shackled to leave my cell. I was forced at times to wear shackles while showering. I was only allowed recreation every 3 or 4 days. Sometimes I'd go for 1 week or more without a shower or recreation. Even though I was injured and used a wheelchair at times, I was still made to [wear] shackles at times.
>
> Also, Monday, Wednesday, and Friday, I was awakened, handcuff[ed], and forced to stand for 5 minutes or more facing the wall while my cell was being searched, destroying property and throwing away food at times. These officers were aware that I was injured and required help with mobility at times. All state charges were dropped on 1–11–18 and [Captain] Hurlock moved me to an Administrative Unit, but continued to house me on TSL; only then did I begin to get showers and recreation daily. I remained on TSL until late February of 2018. I was denied due process and cruel and unusual punishment.

(Compl. 1–2 (paragraph numbers omitted).) As a result of Defendants' actions, Robinson contends that his rights were violated in the following manner:

> [Officer] Fenner assaulted me causing sciatic nerve damage, pain and suffering, excessive force, cruel and unusual punishment, malicious prosecution, false arrest, false imprisonment, and due process . . . .
> [Lieutenant] Hansen[:] I feel that this [lieutenant] violated my right to due process . . . .
> [Captain] Hurlock forced me to be housed on a higher security level [and to] wear shackles knowing that I was injured with sciatica and chronic back issues, which caused stress, anxiety, and pain due to being forced to stand facing the wall while handcuffed during the 3 times a week that they searched my cell (Mon., Wed. & Fri.) knowing I could barely walk due to the sciatic nerve damage that was caused by [Officer] Fenner. I was also sometimes made to shower with shackles on. [Captain] Hurlock is responsible because it is his policy of cruel and unusual punishment [and] denial of due process; during the time I was forced to stay on TSL, I was forced to endure unreasonable searches and never a seizure.[6]

(*Id.* at 3–4 (paragraph numbers omitted).)

### III. DEFENDANTS' ARGUMENTS FOR DISMISSAL

#### A.  Lack of Jurisdiction

Defendants first argue that Robinson has failed to meet his burden to establish that the Court has subject matter jurisdiction over his claims because he "fails to include any specific references to federal laws or constitutional amendments he claims were violated· by the Defendants' actions." (Mem. Supp. Mot. Dismiss 5, ECF No. 51.) Specifically, Defendants argue that instead of including "references to discrete constitutional violations," Robinson "uses commonplace buzzwords like violation of due process,

---

[6] To the extent that Robinson intended his passing reference to "endur[ing] unreasonable searches and never a seizure," (Compl. 4), to constitute a separate Fourth Amendment claim, such a claim fails because the Supreme Court has previously held that "the Fourth Amendment has no applicability to a prison cell." *Hudson v. Palmer*, 468 U.S. 517, 536 (1984).

6

excessive force, false arrest, excessive force, and cruel and unusual punishment, etc.," all of which relate to "alleged wrongs [that] could be brought under the Virginia Constitution and are not exclusive to federal law." (*Id.* at 4.)

However, while stopping short of advocacy, the Court must be solicitous of *pro se* civil rights actions. *Gordon v. Leeke*, 574 F.2d 1147, 1152–53 (4th Cir. 1978). Here, as Defendants concede, Robinson uses "buzzwords" in his Complaint that relate to claims that can be brought under the United States Constitution, and as such, can establish federal question jurisdiction. (*See* Mem. Supp. Mot. Dismiss 4); *cf. Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012) ("The failure to state the elements of a federal claim can form the basis for a Rule 12(b)(1) motion 'only when the claim is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" (citations omitted) (some internal quotation marks omitted)). Moreover, when Robinson filed his original complaint, he indicated that he was filing this action pursuant to 42 U.S.C. § 1983. (*See* ECF No. 1, at 1.) Accordingly, the Motion to Dismiss the Complaint for lack of jurisdiction will be denied.

### B. Failure to State a Claim

#### 1. Claim One (a), (b), and (c)

##### a. Claim One (a)

In Claim One (a), Robinson contends that while he was a pretrial detainee, Officer Fenner assaulted him and used excessive force. (Compl. 1.) Allegations of excessive force against a pretrial detainee must be evaluated under the Due Process Clause of the

Fourteenth Amendment. *See Goodman v. Barber*, 539 F. App'x 87, 89 (4th Cir. 2013) (citation omitted). Under the Fourteenth Amendment standard, a plaintiff must show that the defendant "inflicted unnecessary and wanton pain and suffering upon the detainee." *Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006) (citations omitted) (internal quotation marks omitted), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010). A detainee may prevail by "providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473–74 (2015) (citations omitted).[7] Factors a court may consider to determine whether force was objectively unreasonable may include

> the relationship between the need for the use of force and the amount of force used; the extent of [the detainee's] injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the [detainee] was actively resisting.

*Id.* at 2473 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Because "officers facing disturbances 'are often forced to make split-second judgments' . . . . a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Id.* at 2474 (citing *Graham*, 490 U.S. at 397). The Court must recognize that "agents of the state are permitted to exercise a certain degree of force in order to protect the interests of society." *Sawyer v. Asbury*, 537 F. App'x 283, 294 (4th

---

[7] In *Kingsley*, the Supreme Court determined that the appropriate standard for the Fourteenth Amendment is "only that the officers' use of that force was *objectively* unreasonable," not that "the officers were *subjectively* aware that their use of force was unreasonable . . . ." 135 S. Ct. at 2470.

8

Cir. 2013) (quoting *Justice v. Dennis*, 834 F.2d 380, 382 (4th Cir. 1987), *vacated on other grounds by* 490 U.S. 1087 (1989)). Thus, not every "push or shove, even if it may later seem unnecessary" is serious enough to rise to the level of a constitutional violation. *Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008) (quoting *Graham*, 490 U.S. at 396), *abrogated on other grounds by Wilkins*, 559 U.S. 34.

Consequently, the Court "must accord due deference to an officer's efforts to restrain a detainee when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough.'" *Scarbro v. New Hanover Cty.*, 374 F. App'x 366, 370 (4th Cir. 2010) (quoting *Grayson v. Peed*, 195 F.3d 692, 696 (4th Cir. 1999)). In addition, the determination of whether an officer used excessive force must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 135 S. Ct. at 2473.

Here, Robinson alleges, that "Officer J. Fenner assaulted [him] causing injury to [his] person while [he] was inside of [his] cell awaiting trial." (Compl. 1.) Robinson contends that the assault "caus[ed] sciatic nerve damage." (*Id.* at 3.) Defendants argue that dismissal of this claim is warranted because "[Robinson] does not explain why he was assaulted or how it took place," and because "[n]o explanation is given, or facts provided as to how one might draw the conclusion of inference that [Officer] Fenner's use of force was excessive." (Mem. Supp. Mot. Dismiss 8–9.) However, although Robinson's allegations lack precision, at this stage, Robinson has pled sufficient facts to plausibly suggest that Officer Fenner used force against him while he was in his cell,

9

which "caus[ed] sciatic nerve damage," and that such actions constituted excessive force.[8] See *Kingsley*, 135 S. Ct. at 2473–74. Accordingly, the Motion to Dismiss will be denied with respect to Claim One (a).

### b. Claim One (b) and (c)

In Claim One (b), Robinson alleges, in sum, that after the incident with Officer Fenner that occurred in his cell, (the allegations of which are set forth in Claim One (a)), Officer Fenner "falsely arrested [him]." (Compl. 1.) Relatedly, in Claim One (c), Robinson alleges, in sum, that Officer Fenner "maliciously made false statements causing [Robinson] to be false[ly] imprisoned inside of the jail on TSL," (*id.*), which Robinson indicates is a "higher security level." (*Id.* at 3.)

However, "a false disciplinary charge cannot serve as the basis for a constitutional claim." *Cole v. Holloway*, 631 F. App'x 185, 186 (4th Cir. 2016) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). Although "there are exceptions to this rule," Robinson's cursory and conclusory allegations fail to plausibly suggest that any such exception applies here. *See id.* (citing *Surprenant v. Rivas*, 424 F.3d 5, 13–14 (1st Cir. 2005); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989)). Therefore, with respect to claims of false arrest and false imprisonment, "[a] prisoner does not have a constitutionally guaranteed immunity from being falsely accused" of a disciplinary charge. *See Carlton v. Jackson Cty. Ct.*, No. 88-2255, 1989 WL 56525, at *1 (6th Cir.

---

[8] The Court notes that Robinson's prior submissions indicate that the attack on his person was unprovoked. *Cf. Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (observing that the petitioner "bolstered his claim by making more specific allegations in documents attached to the complaint and in later filings").

10

May 31, 1989) (citing *Freeman*, 808 F.2d at 951; *Baker v. McCollan*, 443 U.S. 137, 146 (1979)). Instead, "the Constitution merely guarantees that prison inmates will 'not . . . be deprived of a protected liberty interest without due process of law.'" *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (alteration in original) (citation omitted) ("[T]he key inquiry in assessing an allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections guaranteed by the Fourteenth Amendment."). As discussed below, Robinson fails to allege any facts to plausibly suggest that Defendants violated his right to due process. *See infra* Part III.B.2–3.

Accordingly, the Motion to Dismiss will be granted with respect to Claim One (b) and (c). Claim One (b) and (c) will be dismissed without prejudice.

### 2. Claim One (d)

In Claim One (d), Robinson contends, in sum, that Officer Fenner "punished [him] for being assaulted all without due process." (Compl. 1.)

"Due process requires that a pretrial detainee not be punished." *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *see Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). However, "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Martin*, 849 F.2d at 870 (citation omitted).

Here, Robinson wholly fails to allege any facts describing how Officer Fenner "punished" him and how he was denied "due process." (*See* Compl. 1); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Robinson's cursory and conclusory allegations fail to state a plausible due process claim against Officer Fenner. *Cf.*

11

*Richardson v. Ray*, 492 F. App'x 395, 396 (4th Cir. 2012) (concluding that a prisoner failed to state a claim for relief with respect to a false disciplinary charges when the prisoner "provide[d] no details of the [disciplinary] hearing, [did] not assert that it was not conducted in accordance with due process, and [did] not state whether he appealed"). *But see Moore v. Plaster*, 266 F.3d 928, 931 (8th Cir. 2001) ("[Courts] have long recognized an inmate's cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for the inmate's exercise of his [or her] *constitutional* rights." (emphasis added) (citation omitted)).

Accordingly, the Motion to Dismiss will be granted with respect to Claim One (d). Claim One (d) will be dismissed without prejudice.

### 3. Claim Two and Claim Three (a)

In Claim Two, Robinson alleges that Lieutenant Hansen "denied [Robinson] due process [by] not investigating [Robinson's] description of the events which were true enough that [he] was found not guilty of assault." (Compl. 1.) In Claim Three (a), Robinson alleges that Captain Hurlock violated his right to due process when Captain Hurlock "had [Robinson] placed on TSL from the time of the incident 8–30–17 to 1–11–18." (*Id.* at 2.)

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "To state a procedural due process claim, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). A

liberty interest may arise from the Constitution itself, or from state or federal laws and policies. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).

"[P]retrial detainees have not been convicted of the crimes with which they are charged," and "[f]or that reason, the [United States] Supreme Court held in *Bell v. Wolfish*, they retain a liberty interest in freedom from 'punishment,' even while they are detained to ensure their presence at trial." *Dilworth v. Adams*, 841 F.3d 246, 251 (4th Cir. 2016) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979)). Specifically, pretrial detainees are "entitled under *Bell* to procedural due process in connection with any 'punishment' imposed on [them] by the Detention Facility." *Id.* at 252. In "the prison discipline context," the "core component of due process . . . is the right to a hearing." *Id.* at 254. Further, an inmate charged with a disciplinary violation is entitled to notice of the charges prior to the hearing, and a "written report describing the disciplinary findings made as a result of the hearing." *Id.* at 253–54.

Here, Robinson contends that Lieutenant Hansen "denied [Robinson] due process [by] not investigating [Robinson's] description of events," by "only accept[ing] Officer Fenner's story," and by "[telling] [Robinson] that he would not reopen the investigation [and] consider[ed] this matter closed." (Compl. 1.) Robinson contends that Captain Hurlock violated Robinson's right to due process when he "had [Robinson] placed on TSL from the time of the incident 8–30–17 to 1–11–18." (*Id.* at 2.)

As an initial matter, Robinson fails to allege any facts identifying in which context Lieutenant Hansen failed to investigate Robinson's "description of events" and "only accept[ed] Officer Fenner's story." (Compl. 1.) Further, besides Robinson's cursory and

13

conclusory allegations that Captain Hurlock violated Robinson's right to due process when he "had [Robinson] placed on TSL," Robinson wholly fails to allege any facts to indicate *how* Captain Hurlock violated his right to due process. (*See id.* at 2); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (discussing that "[p]rinciples requiring generous construction of *pro se* complaints are not, however, without limits").

Nevertheless, from Robinson's cursory and conclusory allegations, as best as the Court can discern, Robinson appears to allege that, in the prison discipline context, Lieutenant Hansen failed to properly investigate the incident between Robinson and Officer Fenner, and Captain Hurlock improperly "placed [Robinson] on TSL," which is a higher security level. (*See* Compl. 1–2, 3.) As noted above, in the prison discipline context, "the minimal requirement" of due process afforded to a pretrial detainees is notice of the charges, a hearing, and a written report describing the findings after the hearing. *Dilworth*, 841 F.3d at 253–54 (citations omitted). However, with respect to the due process required at such hearings, "*Wolff* [*v. McDonnell*, 418 U.S. 539 (1974),] does not contemplate 'full adversary proceedings,' and prison officials retain the discretion to 'keep [a] hearing within reasonable limits' in an effort to avoid disruption and threats to safety." *Id.* at 254 (second alteration in original) (citations omitted). For example, "prison officials need not permit an inmate to cross-examine witnesses against him, nor allow an inmate to call witnesses who would 'create a risk of reprisal or undermine authority'; and inmates do not possess the right to retained or appointed counsel." *Id.* (citations omitted).

14

Although it is clear that Robinson disagreed with the actions taken by Lieutenant Hansen and Captain Hurlock, Robinson fails to allege any facts to plausibly suggest that he did not receive the required due process with respect to his placement "on TSL" or that his due process rights were violated in any manner. (*See* Compl. 1); *see also Dilworth*, 841 F.3d at 254 (citations omitted). Furthermore, contrary to Robinson's assertions, he was not entitled to the investigation of his choosing nor the re-opening of the matter after the investigation concluded. *Cf. Dilworth*, 841 F.3d at 254 (citations omitted) (discussing the prison officials retain the discretion to "keep [a] hearing within reasonable limits"). Thus, for these reasons, the Motion to Dismiss will be granted with respect to Claims Two and Three (a). Claims Two and Three (a) will be dismissed without prejudice.

### 4. Claim Three (b)

In Claim Three (b), Robinson alleges that Captain Hurlock violated his right to be free from cruel and unusual punishment when Captain Hurlock "had [Robinson] placed on TSL from the time of the incident 8–30–17 to 1–11–18," the date on which "[a]ll state charges were dropped." (Compl. 2.) Robinson also alleges, *inter alia*, that during his placement on TSL, he "had to be handcuffed and shackled to leave [his] cell," "was forced at times to wear shackles while showering," "was only allowed recreation every 3 or 4 days," "sometimes [went] for 1 week or more without a shower or recreation" and "[e]ven though [he] was injured and used a wheelchair at times, [he] was still made to wear shackles at times." (*Id.*)

15

As noted above, "[d]ue process requires that a pretrial detainee not be punished." *Bell*, 441 U.S. at 535 n.16. "An individual pretrial detainee may raise a substantive due process challenge to [the] conditions [of his or her confinement] where they are so disproportionate or arbitrary that they are not related to legitimate penological objectives and amount to punishment." *Tate v. Parks*, No. 19–6260, 2019 WL 5885038, at *1 (4th Cir. Nov. 19, 2019) (citing *Williamson v Stirling*, 912 F.3d 154, 174–76 (4th Cir. 2018)).

To state such a claim, Robinson must allege sufficient facts to plausibly indicate that "the challenged conditions were either '(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred.'" *Williamson*, 912 F.3d at 178 (quoting *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 251 (4th Cir. 2005)). "In evaluating whether there is an intent to punish, a court may not simply accept the defendant's justification for placing a detainee in administrative segregation but must 'meaningfully consider whether the conditions of confinement were reasonably related to the stated objective, or whether they were excessive in relation thereto.'" *Tate*, 2019 WL 5885038, at *2 (citing *Williamson*, 912 F.3d at 178).

Defendants contend that dismissal of this claim is warranted, arguing that "[s]imply because [Robinson] [had] to live by the rules of a particular housing classification does not mean he is being punished." (Mem. Supp. Mot. Dismiss 10.) Further, Defendants argue that "Robinson does not allege he contested his security classification or that he was denied review of it." (*Id.*)

16

However, although Robinson's allegations lack precision, at this stage, Robinson has alleged sufficient facts to plausibly suggest that the conditions of his confinement while on TSL were "not reasonably related to a legitimate nonpunitive governmental objective." *Williamson*, 912 F.3d at 178 (citation omitted). Specifically, Robinson identifies a number of specific conditions of his confinement, which he contends were imposed on him from the date of the incident between Robinson and Officer Fenner, which he identifies as August 30, 2017, to January 11, 2018, the date on which he indicates the related state charges were dropped, and Defendants do not specifically address this claim regarding the conditions of Robinson's confinement while he was on TSL. Accordingly, for these reasons, the Motion to Dismiss will be denied with respect to Claim Three (b).

## IV. CONCLUSION

The Motion to Dismiss (ECF No. 50) will be granted in part and denied in part. Claim One (b), (c), and (d), and Claim Three (a) will be dismissed without prejudice. The claims against Lieutenant Hansen, which are set forth in Claim Two, will be dismissed without prejudice. The action will proceed on Claim One (a) against Officer Fenner and Claim Three (b) against Captain Hurlock. Any party wishing to file a dispositive motion must do so within sixty (60) days of the date of entry hereof.

An appropriate Order shall accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
Date: Feb. 19, 2020     SENIOR UNITED STATES DISTRICT JUDGE
Richmond, Virginia